IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Gustavo Negrete,<br><br>            Plaintiff,<br><br>      vs.<br><br>Carolyn W. Colvin,<br>Commissioner of Social Security,[1]<br><br>            Defendant. | Civil Action No. 6:12-386-GRA-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

This case is before the court for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a) DSC, concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[2]

The plaintiff brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. 405(g)) to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for disability insurance benefits under Title II of the Social Security Act.

**ADMINISTRATIVE PROCEEDINGS**

The plaintiff filed an application for disability insurance benefits ("DIB") on July 24, 2008, alleging that he became unable to work on January 10, 2005. The application was denied initially and on reconsideration by the Social Security Administration. On July 6, 2009, the plaintiff requested a hearing. The plaintiff further requested that the alleged onset date of disability be amended to April 25, 2005. The administrative law judge ("ALJ"),

---

[1] Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013. Pursuant to Fed.R.Civ.P. 25(d), Colvin should be substituted for Michael J. Astrue as the defendant in this case.

[2] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

before whom the plaintiff and Carroll H. Crawford, an impartial vocational expert, appeared on July 29, 2010, considered the case *de novo*, and on August 19, 2010, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended. The ALJ's finding became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on December 16, 2011. The plaintiff then filed this action for judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> (1)   The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.
>
> (2)   The claimant has not engaged in substantial gainful activity since April 25, 2005, the alleged onset date (20 C.F.R §§ 404.1571 *et seq*).
>
> (3)   The claimant has had the following severe impairments: low back pain and left shoulder strain (20 C.F.R. § 404.1520(c)).
>
> (4)   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).
>
> (5)   After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform work as defined in 20 C.F.R. § 404.1567(b) with impairments which require simple, routine tasks with no reading or writing; a supervised environment; no lifting and/or carrying over 20 pounds occasionally and 10 pounds frequently; a 30-45 minute sit/stand option at the work station; only occasional stooping, twisting, crouching, kneeling, and climbing of stairs or ramps;

no crawling or climbing of ladders or scaffolds; only occasional reaching overhead with the left non-dominant arm; no use of foot pedals with the left lower extremity; and avoidance of hazards such as unprotected heights and dangerous machinery.

(6) The claimant is unable to perform any past relevant work (20 C.F.R. § 404.1565).

(7) The claimant was born on February 21, 1965, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 C.F.R. § 404.1563).

(8) The claimant has a 6th grade education and is able to communicate in English (20 C.F.R. § 404.1564).

(9) Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 C.F.R. § 404.1568).

(10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569 and 404.1569(a)).

(11) The claimant has not been under a disability, as defined in the Social Security Act, from April 25, 2005, through the date of this decision (20 C.F.R. § 404.1520(g)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

**APPLICABLE LAW**

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). "Disability" is defined in 42 U.S.C. § 423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment that equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment that prevents past relevant work, and (5) has an impairment that prevents him from doing substantial gainful employment. 20 C.F.R. § 404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *Id.* § 404.1520(a)(4).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff

can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. See *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citation omitted).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings and that his conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

**EVIDENCE PRESENTED**

The plaintiff was born on February 21, 1965 (Tr. 105), and he was 40 years old on the amended date of his alleged onset of disability and 45 years old on the date of the ALJ's decision (Tr. 25). The plaintiff completed six years of school before coming to the United States and worked as a stable attendant (Tr. 48, 131, 139, 297).

In January 2005, the plaintiff sustained a work-related accident when he was jerked by a horse when he was trying to groom it; he was initially evaluated by orthopedist Ty Carter, M.D., in March 2005 (Tr. 249). An MRI of the plaintiff's lumbar spine showed some early degenerative changes and some broad-based disk bulges at L4-5 and L5-S1. Dr. Carter recommended a series of epidural steroid injections (Tr. 250). In July 2005, Dr. Carter indicated the plaintiff had not gotten much relief from the three injections, and the plaintiff wished to proceed with surgery. Dr. Carter indicated his plan to proceed with a minimally invasive decompression at the left L4-5 and L5-S1 levels (Tr. 251).

At a follow-up appointment in January 2006, Dr. Carter stated that the plaintiff had been denied the surgery because of possibility of a diagnostic finding. Dr. Carter reported that he was not convinced that surgery was the best option, but noted that the plaintiff had tried most other treatment, including activity modification, medicines, and injections (Tr. 252). In March 2006, Dr. Carter reported that a functional capacity evaluation showed that the plaintiff was capable of performing medium work (Tr. 178-80, 253). Dr. Carter opined that the plaintiff had reached his maximum medical improvement, and he rated the plaintiff with a 12% impairment of the whole person (Tr. 253).

The plaintiff underwent physical therapy from February 6, 2006, to April 28, 2006 (Tr. 183-89). He was discharged as he was not making any more strength, function, or pain improvements (Tr. 188).

In August 2006, the plaintiff was evaluated by pain management specialist Timothy Zgleszewski, M.D. Dr. Zgleszewski concluded that the plaintiff was not at

6

maximum medical improvement. He felt the source of the plaintiff's lower back pain was likely to be found either in his left SI joint or as a result of left-sided lumbosacral radiculitis. The SI joint problem could be treated with an SI joint injection followed by physical therapy, while the lumbosacral radiculitis could be treated with a percutaneous discectomy at the L5-S1 segment. Dr. Zgleszewski also recommended an MRI of the plaintiff's left shoulder (Tr. 190-92).

In December 2006, the plaintiff underwent an independent medical evaluation performed by orthopedist William Lehman, M.D. (Tr. 196-201). Dr. Lehman diagnosed the plaintiff with persistent back pain with left leg radicular symptoms and persistent left shoulder pain consistent with impingement. Dr. Lehman concluded that the plaintiff was at maximum medical improvement with regard to his back, left leg, and left shoulder impairments (Tr. 199-201). Dr. Lehman rated the plaintiff as having a 12% whole person impairment, equivalent to a 16% regional lumbar spine impairment, and assigned a 5% left upper extremity impairment (Tr. 200).

In May 2007, the plaintiff was evaluated by orthopedist Ralph Owings, Jr., for complaints of left shoulder problems. An MRI of the left shoulder showed no evidence of rotator cuff tear, but did show mild AC joint arthropathy with subchondral edema in the distal clavicle (Tr. 205-06). Dr. Owings stated that, with regard to the plaintiff's shoulder, there was no reason why he could not go back to work. At a June 2007 follow-up, the plaintiff had full range of motion of the cervical spine and full range of motion of his shoulder (Tr. 204). Dr. Owings stated that he could not explain why the plaintiff continued to complain of pain, as there was nothing objectively to corroborate his complaints (Tr. 204).

In October 2007, vocational consultant Harriet Wilkinson evaluated the plaintiff and concluded that he was unable to work secondary to his pain complaints and physical limitations (Tr. 295-301).

In December 2007, Dr. Carter reported that the plaintiff was approved for decompression type surgery because conservative therapies had failed to alleviate his L5 and S1 radicular symptoms. The plaintiff underwent surgery without complications, performed by Dr. Carter on February 20, 2008 (Tr. 207, 254-55). At a May 2008 follow-up, Dr. Carter stated that the plaintiff had reached maximum medical improvement and that he was capable of sedentary to light work, with frequent position changes, no lifting more than 10-15 pounds, and no overhead work (Tr. 258). Dr. Carter rated the plaintiff as having a 12% whole person impairment, based on his specific injury, loss of muscle strength, continued radiculopathy, and history of bulging disc (Tr. 258).

In a letter to the plaintiff's attorney dated June 18, 2008, Dr. Carter stated that he did not feel that the plaintiff was totally disabled because a functional capacity evaluation indicated that he was capable of performing light duty work. Dr. Carter also stated that the plaintiff's impairment was permanent and that he would need ongoing pain management with a pain management physician (Tr. 260).

In September 2008, pain management specialist John Downey, D.O., initially evaluated the plaintiff and found that he had pain-limited strength and increased reflexes of the left upper and lower extremity. Dr. Downey concluded that the plaintiff's "physical examination [was] suggestive of a central process, possibly cervical spinal stenosis or something involving the cervical spine or right hemisphere, to account for his left upper and lower extremity symptomatology" (Tr. 276-77). An MRI of the plaintiff's cervical spine, however, revealed preserved disc spaces, no instability, and no evidence of osseous pathology (Tr. 273). Also in December 2009, an MRI of the plaintiff's brachial plexus revealed no signal abnormality with the nerve roots or cord on the left side of the neck, and in March 2010, lumbar spine x-rays revealed preserved disc spaces, no instability, and mild facet disease (Tr. 288, 294). The plaintiff continued to receive pain management treatment and prescription refills between October 2009 and April 2010 (Tr. 287-94).

In October 2008, Dale Van Slooten, M.D., a State agency physician, reviewed the medical record and concluded that the plaintiff was capable of performing a limited range of light work (Tr. 261-68). A second State agency physician, Robert Kukla, M.D., reviewed the record in June 2009 and also concluded that the plaintiff could perform a limited range of light work (Tr. 279-86).

In a June 2010 letter to the plaintiff's attorney, Dr. Downey reported that the plaintiff ambulated without difficulty, but showed an inability to sit or stand for a long period of time. Dr. Downey noted the plaintiff reported improvement of his pain with his current medication regimen down to "5" on a scale of "10." Dr. Downey assessed the plaintiff with status post lumbar surgery with lumbar radiculopathy and neuropathic left hemibody pain, etiology undetermined (Tr. 302). Dr. Downey completed a medical source statement in June 2010 indicating that the plaintiff:

> – could sit for 20 minutes at one time, and stand for 20 minutes at one time;
> – could sit, stand, or walk for less than 2 hours in an 8-hour day;
> – needed to take unscheduled breaks 2-3 times a day for 20-30 minutes at a time;
> – could occasionally lift and carry 10 pounds, and frequently lift and carry less than 10 pounds;
> – could rarely twist, stoop, crouch, and climb stairs;
> – could never climb ladders;
> – had no difficulty reaching, handling, and fingering with the right upper extremity;
> – could never reach with the left upper extremity, and could use the left upper extremity for gross and fine manipulation only 10% of the time;
> – was capable of low-stress work, but would be "off task" 25% or more of the time; and
> – would likely be absent from work more than four days per month due to his impairments or treatment.

(Tr. 305-07). Dr. Downey also noted that English was not the plaintiff's primary language, which affected his understanding and being understood, and that his frustration played a role in his level of pain and depression (Tr. 307).

At the July 2010 hearing, the plaintiff testified that he experienced sharp pain in his lower back and left leg (Tr. 38). He could only sit for 15-20 minutes at a time and could only walk for 15-20 minutes at a time. He experienced sharp pain in his back when bending, and sharp pain in his leg when squatting (Tr. 41-42). He tried to cook at home, but could not finish due to pain in his left hand. He could not be around anyone because his pain caused him to be depressed, but he was not being treated for a mental condition. Also, if others said something that he did not agree with, he became angry and went to his room (Tr. 43-45). He drove a Ford 450 truck back and forth to his appointments and drove at least 2-3 days per week (Tr. 45-47).

The ALJ asked vocational expert Carroll Crawford to consider a hypothetical individual who was the plaintiff's age, with the same education and work experience as the plaintiff. The hypothetical individual also was assigned the following limitations: simple, routine tasks, with no reading or writing; no lifting, and/or carrying over 20 pounds occasionally and 10 pounds frequently; 30-45 minute sit/stand option at the work station; occasional stooping, twisting, crouching, kneeling, and climbing of stairs or ramps; no crawling or climbing of ladders or scaffolds; occasional reaching overhead with the left non-dominant arm; no use of foot pedals with the left lower extremity; and no exposure to hazards such as unprotected heights and dangerous machinery (Tr. 48).

The vocational expert responded that the individual could perform unskilled, light jobs, including small products assembler (*Dictionary of Occupational Titles*[3] ("*DOT*") # 706.684-022) (6,000 jobs in South Carolina and 420,000 jobs in the United States), nut

---

[3] U.S. Department of Labor, Employment & Training Admin., *Dictionary of Occupational Titles* (4th ed. 1991).

and bolt assembler (*DOT* # 929.587-010) (1,600 jobs in South Carolina and 112,000 jobs in the United States), and electronics inspector (*DOT* # 727.687-062) (3,000 jobs in South Carolina and 210,000 jobs in the United States) (Tr. 49-50).

## **ANALYSIS**

The plaintiff argues that (1) the ALJ erred in finding Dr. Downey's opinion was inconsistent with substantial evidence in the record and by speculating as to Dr. Downey's motives for rendering his opinion; and (2) the ALJ's reliance on the vocational expert's testimony was not supported by substantial evidence.

### *Treating Physician*

The plaintiff first argues that the ALJ failed to properly consider the opinion of treating physician Dr. Downey. The regulations require that all medical opinions in a case be considered, 20 C.F.R. § 416.927(b), and, unless a treating source's opinion is given controlling weight, weighed according to the following non-exclusive list: (1) the length of the treatment relationship and the frequency of the examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 416.927(d)(2)-(5). *See also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005). However, statements that a patient is "disabled," "unable to work," meets the listing requirements, or similar assertions are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96-5p, 1996 WL 374183, at *5.

The opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case. *See* 20 C.F.R. § 416.927(d)(2); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Social Security Ruling 96-2p requires

that an ALJ give specific reasons for the weight given to a treating physician's medical opinion. 1996 WL 374188, at *5. As stated in Ruling 96-2p:

> [A] finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [20 C.F.R. § 416.927]. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*Id.* at *4.

As set forth above, in June 2010, pain management specialist Dr. Downey, who began treating the plaintiff in September 2008, completed a medical source statement in which he opined that the plaintiff could sit for 20 minutes at one time and stand for 20 minutes at one time; could sit, stand, or walk for less than 2 hours in an 8-hour day; needed to take unscheduled breaks 2-3 times a day for 20-30 minutes at a time; and could occasionally lift and carry 10 pounds, and frequently lift and carry less than 10 pounds, among other limitations (Tr. 305-07).

The ALJ rejected Dr. Downey's opinion that the plaintiff was incapable of performing even the minimal requirements of sedentary work, noting the opinion departed "substantially from the rest of the evidence of record" (Tr. 22). The ALJ specifically noted (1) the very limited objective findings in the record; (2) the opinion of another treating physician, Dr. Carter, that the plaintiff was not totally disabled and retained the capacity to perform sedentary to light work; (3) Dr. Downey's own report that the plaintiff's pain condition showed improvement with treatment; and (4) the findings as to the plaintiff's limitations were inconsistent with the plaintiff's own testimony as to his daily activities (Tr. 19, 22).

This court agrees that the medical record revealed "very limited objective findings to support the degree of limitations asserted by [the plaintiff]" and found by Dr. Downey (Tr. 22). In May 2007, Dr. Owings reported that an MRI of the plaintiff's left shoulder showed no evidence of rotator cuff tear, and he opined that, as far as the plaintiff's shoulder was concerned, he saw no reason the plaintiff could not go back to work (Tr. 204). A June 2008 functional capacity evaluation indicated that the plaintiff was capable of performing light duty work (Tr. 260). In October 2008, Dr. Downey reported that an MRI of the plaintiff's cervical spine revealed preserved disc spaces, no instability, and no evidence of osseous pathology (Tr. 273). Also, in December 2009, an MRI of the plaintiff's brachial plexus revealed no signal abnormality with the nerve roots or cord on the left side of the neck, and in March 2010, lumbar spine x-rays revealed preserved disc spaces, no instability, and mild facet disease (Tr. 288, 294).

Furthermore, the ALJ found it significant that Dr. Downey reported in June 2010 that the plaintiff had improvement of his pain condition with his current medication regimen down to "5" on a scale of "10" (Tr. 19; *see* Tr. 302). Thus, the ALJ reasonably found that the plaintiff's symptoms improved with treatment (Tr. 19). *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (a condition is not disabling if the symptoms are reasonably controlled by medication or treatment).

The ALJ further noted that the limitations indicated by Dr. Downey in the medical source statement were consistent with a person who "could not even move around," while the plaintiff testified that he drove his truck two to three times a week, he went to the grocery store with his wife, and he did not use a cane or other assistive device (Tr. 22; *see* Tr. 45-47).

The ALJ also found it significant that another treating physician, Dr. Carter, stated in May 2008 that the plaintiff had reached maximum medical improvement and that he was capable of sedentary to light work, with frequent position changes, no lifting more

13

than 10-15 pounds, and no overhead work (Tr. 22; *see* Tr. 258). Further, Dr. Carter opined in June 2008 that the plaintiff was not totally disabled as the plaintiff's functional capacity evaluation indicated he could perform light duty work, although his impairment was permanent (Tr. 22; *see* Tr. 260).

In addition to Dr. Carter's opinion, the ALJ relied on the opinions of the State agency medical sources in finding the plaintiff could perform a limited range of light work. Drs. Van Slooten and Kukla reviewed the medical record in October 2008 and June 2009, respectively, and concluded that the plaintiff was capable of performing the exertional requirements (sitting, standing, walking, lifting, carrying, pushing, and pulling) of light work (Tr. 261-68, 279-86). The ALJ gave "great weight" to the opinions of the State agency medical consultants because they were consistent with the objective medical evidence, but the ALJ further restricted the plaintiff to a 30-45 minute sit/stand option at the work station, only occasional reaching overhead with the left non-dominant arm, no use of foot pedals with the left lower extremity, and avoidance of hazards such as unprotected heights and dangerous machinery (Tr. 20, 23). *Cf. Smith v. Schweiker*, 795 F.2d 343, 345-46 (4th Cir. 1986) (the Commissioner may rely on a nonexamining medical source's opinion where it is consistent with the record).

The ALJ also stated as follows with regard to Dr. Downey's opinion:

[T]he possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another. Another reality, which should be mentioned, is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patients' requests and avoid unnecessary doctor/patient tension. While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case, as his Medical Source Statement limitations is consistent with such a person that could not even move around . . . .

14

(Tr. 22). The plaintiff argues that rather than attempting to determine whether Dr. Downey's opinion was well grounded in the record, the ALJ instead chose to attempt to discredit the opinion by speculating regarding Dr. Downey's motives, which "casts doubt upon the ALJ's ability to fairly and impartially evaluate the opinions of Dr. Downey" (pl. brief 21). However, the ALJ expressly recognized that improper motives were merely a "possibility" that could not be confirmed. Taken in context, this court finds that the ALJ's comments about Dr. Downey's possible motives constitute nothing more than dicta questioning the reasons for the inconsistencies between Dr. Downey's opinion and the other evidence in the record. As discussed above, the ALJ set forth specific reasons supported by substantial evidence for discounting Dr. Downey's opinion. To the extent that the ALJ may have improperly included a discussion of the general risks of unreliability when a treating medical source sympathizes with a patient, the court finds this error to be harmless because the ALJ ultimately gave other reasons for rejecting Dr. Downey's testimony that were supported by substantial evidence. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (finding the ALJ's error harmless where the ALJ would have reached the same result notwithstanding).

Based upon the foregoing, this allegation of error is without merit. This court further finds that the ALJ properly evaluated the evidence of record in assessing the plaintiff's residual functional capacity.

***Vocational Expert***

The plaintiff argues that the ALJ's reliance on the vocational expert's testimony was not supported by substantial evidence (pl. brief 27-28). "[I]n order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) (citation omitted). The plaintiff argues that the ALJ erred in his residual functional capacity evaluation and, therefore, the ALJ's hypothetical question to the

vocational expert and ultimate reliance on the vocational expert's testimony in response to that question were in error at step five of the sequential evaluation process. However, as discussed above, the plaintiff's residual functional capacity assessment was based upon substantial evidence. The ALJ fairly set out the plaintiff's impairments in a hypothetical to the vocational expert, and the vocational expert identified representative occupations that such a hypothetical person could perform (Tr. 48-50; *see* Tr. 24). Based upon the foregoing, the ALJ's determination at step five was based upon substantial evidence, and this allegation of error is without merit.

## **CONCLUSION AND RECOMMENDATION**

This court finds that the Commissioner's decision is based upon substantial evidence and free of legal error. Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

Kevin F. McDonald
United States Magistrate Judge

April 9, 2013
Greenville, South Carolina